CADES SCHUTTE
A Limited Liability Law Partnership

JOHN P. DUCHEMIN          9748
KATHERINE E. BRUCE        11373
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4212
Telephone:  (808) 521-9200
Fax:  (808) 521-9210
Email: jduchemin@cades.com
         kbruce@cades.com

Attorneys for Plaintiff
CARL STRAUB, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARL STRAUB, JR.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE ASSOCIATION OF APARTMENT OWNERS OF WAILEA EKAHI, CAROLYN ANTHONY, DAVID BERMAN, ROBERT CURRAN, RICHARD LINDSETH, DAN McKENNA, and CATHY O'DONOHUE,<br><br>　　　　Defendants. | CIVIL NO. _____<br><br>**COMPLAINT; JURY DEMAND; SUMMONS** |

# COMPLAINT

## Nature of the Action

1. This diversity-jurisdiction action alleges state-law statutory and common-law claims against Defendants the Association of Apartment Owners of Wailea Ekahi (the "Association"), its general manager Cathy O'Donohue ("O'Donohue"), and five Association Board of Directors members (collectively, the "Association Board Defendants"): Carolyn Anthony ("Anthony"), David Berman ("Berman"), Robert Curran ("Curran"), Richard Lindseth ("Lindseth"), and Dan McKenna ("McKenna"). Collectively, all of the individuals and entities named above are the "Defendants."

2. The claims in this action arise from a smear campaign conducted against Plaintiff Carl Straub, Jr. ("Plaintiff"), a Wailea Ekahi condominium owner and former Association Board of Directors member and President.

3. As set forth in more detail below, the Defendants published written and verbal communications that falsely stated or implied that Plaintiff performed improper alterations to his Wailea Ekahi condominium unit, in violation of the condominium house rules and governing documents, and falsely stating or implying that Plaintiff orchestrated a kickback scheme with a general contractor who performed work on behalf of the condominium association.

4. The false and defamatory statements caused an uproar in the Wailea

Ekahi condominium community of approximately 300 owners, resulting in Plaintiff's removal as Association Board of Directors President and severe injury to his personal and professional reputation.

## The Parties

5. Plaintiff Carl Straub, Jr. is a dual citizen of the United States and Canada and is domiciled in Montana. Plaintiff is a practicing attorney licensed in the state of Idaho, with decades of experience and expertise as in-house counsel for multinational corporations.

6. Defendant Association is a nonprofit corporation incorporated in the State of Hawaiʻi and with its principal place of business in Wailea, County of Maui, State of Hawaiʻi. The purpose of the Association is to maintain, operate, administer, and manage the Wailea Ekahi condominium project. The Association is incorporated in Hawaiʻi. Its principal place of business is Hawaiʻi.

7. Defendant Anthony was a member of the Association's Board of Directors at the time of the events set forth in this Complaint, and is a citizen of the United States and a domiciliary of New Jersey.

8. Defendant David Berman was a member of the Association's Board of Directors at the time of the events set forth in this Complaint, and is a citizen of the United States and a domiciliary of California.

9. Defendant Robert Curran was a member of the Association's Board of

Directors at the time of the events set forth in this Complaint, and is a citizen of the United States and a domiciliary of California.

10. Defendant Richard Lindseth was a member of the Association's Board of Directors at the time of the events set forth in this Complaint, and is a citizen of Canada.

11. Defendant Dan McKenna was a member of the Association's Board of Directors at the time of the events set forth in this Complaint, and is a citizen of the United States and a domiciliary of Texas.

12. Defendant Cathy O'Donohue is a citizen of the United States and a domiciliary of Hawai'i.

### 13. **Jurisdiction**

14. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

15. There is complete diversity between Plaintiff and all defendants because Plaintiff is a citizen of Montana for purposes of diversity jurisdiction. Defendants are citizens of Hawai'i, New Jersey, California, Canada, and Texas for purposes of diversity jurisdiction.

16. The amount in controversy exceeds $75,000.

### **Factual Allegations**

17. Plaintiff is an owner of a condominium unit at the Wailea Ekahi condominium development. Plaintiff was elected to the Association Board of

Directors (the "Board") in 2020 and was appointed to the role of Board Treasurer. In 2021, Plaintiff was appointed Board President. Plaintiff successfully ran for the Board as part of a reform platform with several other Board candidates, with the common goal of modernizing and professionalizing the operation and management of the Association.

18. During his tenure as the Association's President, Plaintiff, with the support of the other "reform platform" directors, instituted changes to the Association's policies, rules, and operations that displeased the Association Board Defendants. On information and belief, the displeasure of the Association Board Defendants at those changes was a driving motive behind those Defendants' false and defamatory statements and other misconduct set forth in this Complaint.

19. In August 2022, Plaintiff engaged a contractor to make minor repairs to his and his wife's Wailea Ekahi condominium unit. The contractor began work on or around August 15, 2022 and completed work on or about August 22, 2022.

20. At the time, the Association's House Rules required that "major alterations" needed prior Association approval, but "minor repair" work of the kind Plaintiff's contractor was performing did not need such approval. Plaintiff nonetheless informed O'Donohue about the repair work in advance, and O'Donohue represented to Plaintiff that the work did not require any prior approval by the Board.

21. Nonetheless, when a concerned neighbor later told O'Donohue about work ongoing in Plaintiff's unit, O'Donohue trespassed in Plaintiff's unit without permission and took photographs of the work.

22. In verbal and written statements, O'Donohue then falsely stated to certain Association directors, and to certain Wailea Ekahi owners and residents, that Mr. Straub had failed to obtain required approvals from herself and/or the Board before undertaking major renovations at his unit.

23. O'Donohue further stated and implied in written statements that Plaintiff had taken advantage of his position as Board President to ignore or circumvent the rules.

24. O'Donohue further stated that Plaintiff had illicitly arranged for a general contractor acquaintance to acquire hundreds of thousands of dollars' worth of contract business from the Association, and furthermore represented and/or implied that Plaintiff had received kickbacks in connection with these contracts. All such statements and innuendos were entirely false.

25. O'Donohue knew that these statements and representations were false because O'Donohue had been informed of Plaintiff's repair work in advance and told Plaintiff that no Board approval was necessary. Also, O'Donohue knew or should have known that Plaintiff's repair work was classified as "minor" under the Association's House Rules and that no approval was required. Moreover,

O'Donohue knew or should have known that Plaintiff had no part in steering or awarding any contracts to any contractor retained by the Association, and that all of the contracts in question were reviewed and approved by O'Donohue herself.

26. O'Donohue made the aforementioned false and defamatory statements both in her individual capacity and as an agent and employee of the Association.

27. In the wake of O'Donohue's false statements, the Association Board Defendants exchanged written communications with each other and O'Donohue to discuss the false and defamatory statements and to coordinate illegal, non-public Board meetings to discuss Board business without the required notice to other Board members. On information and belief, the purpose of these meetings was to discuss the false information received from O'Donohue and for the Association Board Defendants to commence steps to remove Plaintiff as Association Board President and to force his resignation from the Board. In addition, the Association Board Defendants had further discussions directly with other Wailea Ekahi owners, further disseminating the false statements.

28. At around the same time as the Association Board Defendants commenced their secret meetings and defamatory communications about Plaintiff, the Association Board voted to investigate the allegations of misconduct against Plaintiff. The Board's Legal Subcommittee conducted the investigation, with the assistance of Board counsel, James Geiger. Mr. Straub recused himself from

participation in the investigation and the subsequent report discussed below.

29. The Legal Subcommittee performed an extensive investigation (the "Investigation"), which included reviewing records and conducting interviews with O'Donohue, other Association staff members, Plaintiff, and the contractor Plaintiff had hired.

30. The Investigation resulted in a report to the Board (the "Report"), dated September 19, 2022, which concluded, inter alia, (1) Plaintiff did not violate any of the Association's policies; and (2) some of the Association's requirements for homeowners to undertake renovations to their privately owned units were inconsistent with Hawaiʻi law. The Association Board Defendants publicly released the Report by e-mailing it to all owners, thereby waiving any attorney-client or other privileges associated with the Investigation and the Report.

31. The Report recommended that the Board, among other things, (1) take no action against Plaintiff because he did ***not*** violate the Association's rules; and (2) take steps to conform the Association's rules to Hawaiʻi law.

32. The Board considered the Report in an open Board meeting on October 19, 2022. Mr. Geiger, the Association's attorney, spoke at the meeting and made statements in support of the findings of the Investigation and of the written conclusions of the Report, including his recommendation that the Board follow the conclusions of the Report.

33. Despite having reviewed the contents of the Report and having heard the public recommendations of counsel in support of the findings of the Report and the Investigation, the Association Board Defendants at the October 19, 2022 Board meeting rejected the recommendations of the Report and the advice of Board counsel.

34. Instead, the Association Board Defendants continued at that October 19, 2022 meeting to make false and defamatory statements about Plaintiff, and/or implicitly or explicitly endorse such statements. Among other such defamatory acts, Anthony stated that Plaintiff's conduct constituted a breach of his fiduciary duties to the Association. Berman, Curran, McKenna, and Lindseth made similar public, defamatory statements that falsely stated or implied that Plaintiff had breached his fiduciary duties to the Association, that he had committed serious misconduct and abused his position as Board President, and that he was not fit to serve as Board President.

35. The Association Board Defendants also implicitly or explicitly endorsed, and/or refused to refute or contradict, numerous statements by condominium owners who attended the October 19, 2022 meeting and who expressed anger at Plaintiff's purported "misconduct," even though (a) the Report vindicating Plaintiff had just been read in public, (b) Mr. Geiger had indicated his support of the Report's conclusions, and (c) the information in the Report

contradicted and refuted the condominium owners' statements that Plaintiff had committed misconduct. The Board Member Defendants' endorsement of these statements, and refusal to contradict them, in itself was defamatory and/or painted Plaintiff in a false light.

36. The Association Board Defendants, who at that point comprised a bare majority of the Board, then voted 5-4 to remove Plaintiff as Board President—notwithstanding the contents of the Report, the recommendations of counsel, and the fact that Plaintiff had been cleared of wrongdoing.

37. After his removal as Board President, Plaintiff served out the remainder of his term on the Board, but the Association Board Defendants effectively ostracized him during that time, refusing to provide him with equal access to Board documentation, holding Board meetings without providing notice to him, and withholding from him vital information about critical Board matters. Throughout this time, the Association Board Defendants continued to hold illegal, non-noticed meetings at which key decisions were made without notice to or participation by the entire Board.

38. Plaintiff and Defendants mediated these claims in advance of litigation as required by Hawaiʻi Revised Statutes § 514B-161. No settlement was reached during the mediation.

## COUNT I
## DEFAMATION (LIBEL)

39. Paragraphs 1 through 38 are realleged and reincorporated by reference herein.

40. O'Donohue made false and defamatory statements against Plaintiff by falsely stating in emails and/or other writings to Association Board members, Wailea Ekahi condominium owners, employees, third-party contractors, and/or Wailea Ekahi residents that Plaintiff had was making alterations to his Wailea Ekahi unit without getting the required approvals, and in representing that Plaintiff took advantage of his position of Board president in so doing.

41. O'Donohue also made false and defamatory statements and/or innuendos when she stated and/or implied that Plaintiff had illicitly arranged for a general contractor acquaintance to acquire hundreds of thousands of dollars' worth of contract business from the Association, and furthermore stated and/or implied that Plaintiff had received kickbacks in connection with such contracts.

42. O'Donohue was acting as an agent and/or managing employee of the Association in the scope of her employment when she made these false and defamatory statements. Accordingly, the Association also is liable for O'Donohue's acts in the scope of her employment.

43. O'Donohue acted with actual malice and/or with reckless disregard as to the truth of all such statements.  O'Donohue also was negligent in failing to

ensure the truth of all of her false and defamatory statements and innuendoes about Plaintiff.

44.     The Association Board Defendants repeated O'Donohue's false and defamatory statements and/or innuendos by publishing them to third parties, by publishing their own false and defamatory statements and/or innuendos about Plaintiff, and/or by explicitly or implicitly endorsing the false and defamatory statements that O'Donohue or other individuals made about Plaintiff.

45.     Defendants' statements imputed Plaintiff's fitness to perform his duties as Association Board President and did prejudice him in his performance as Board President because the statements led to his removal from that role.

46.     Defendants' statements also imputed Plaintiff's fitness to perform his duties as a practicing attorney and tend to prejudice him in the pursuit of his legal career because integrity and honesty are necessary qualities for the practice of law.

47.     Defendants' defamatory statements are actionable irrespective of special harm and constitute libel per se.

48.     Defendants' publication of these statements also caused special harm to Plaintiff by damaging his reputation as a Board member and as a Wailea Ekahi community member, leading to the Board Member Defendants' ouster of Plaintiff from his position as Board President, and damaging his reputation in the community and as an attorney, a profession in which a reputation for integrity is

paramount.

49. As a result of Defendants' publication of false and defamatory written statements, Plaintiff suffered general, special, incidental, and consequential damages in an amount to be determined at trial but exceeding the $75,000 jurisdictional threshold in any event.

## COUNT II
## DEFAMATION (SLANDER)

50. Paragraphs 1 through 49 are realleged and reincorporated by reference herein.

51. The Board Member Defendants made false and defamatory verbal statements in the open Board meeting on October 19, 2023 when they stated, implied and/or explicitly or implicitly endorsed verbal statements that Plaintiff had committed a breach of fiduciary duty, that Plaintiff had committed misconduct, and that Plaintiff was unfit to serve as Board President.

52. Defendants committed the above conduct with actual malice and/or with reckless disregard for the truth of their verbal statements.  Defendants also were negligent in failing to ensure the truth of all of their false and defamatory statements and innuendoes about Plaintiff.  Defendants were aware of and had voted to accept the Report that cleared Plaintiff of wrongdoing.

53. Defendants' verbal statements imputed Plaintiff's fitness to perform his duties as Association Board President and did prejudice him in his performance

as Board President because the statements led to his removal from that role.

54. Defendants' verbal statements also imputed Plaintiff's fitness to perform his duties as a practicing attorney and tend to prejudice him in his performance as an attorney because integrity and honesty are necessary qualities for the practice of law.

55. Defendants' defamatory verbal statements are actionable irrespective of special harm and are slander per se.

56. Nonetheless, Defendants' publication of these verbal statements caused special harm to Plaintiff by damaging his reputation as a Board member and as a community member at the Wailea Ekahi, leading to the Board Member Defendants' ouster of Plaintiff from his position as Board President, and damaging his reputation in the community and as an attorney, a profession in which a reputation for integrity is paramount.

57. As a result of Defendants' publication of these statements, Plaintiff suffered general, special, incidental, and consequential damages in an amount to be determined at trial but exceeding the $75,000 jurisdictional threshold in any event.

## COUNT III
## DEFAMATION (FALSE LIGHT)

58. Paragraphs 1 through 57 are realleged and reincorporated by reference herein.

59. Defendants' statements accusing Plaintiff of misconduct, that he was

unfit to serve as Board President, and that he was in breach of his fiduciary duties, which were published in each of the manners set forth *supra*, placed Plaintiff in a false light that would be highly offensive to a reasonable person.

60. Defendants knew that their statements putting Plaintiff in a false light were false or were in reckless disregard as to their falsity and the false light in which Plaintiff would be placed. Defendants also were negligent in failing to ensure that their statements did not place Plaintiff in a false light.

61. As a result of Defendants' publication of these statements, Plaintiff suffered general, special, incidental, and consequential damages in an amount to be determined at trial but exceeding the $75,000 jurisdictional threshold in any event.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

62. Paragraphs 1 through 61 are realleged and reincorporated by reference herein.

63. The Association Board Defendants owe fiduciary duties to the Association as a whole, and to the Association's members individually, to exercise due care in their conduct as Board members and to not act in a self-interested manner.

64. By the conduct set forth herein, the Association Board Defendants breached said fiduciary duties by acting detrimentally to the interests of the Wailea Ekahi condominium as a whole and to Plaintiff (in his capacity as an Association

member and Wailea Ekahi condominium owner). The conduct set forth above also constitutes grossly negligent or intentional misconduct.

65. As a result of these breaches, Plaintiff suffered general, special, incidental, and consequential damages in an amount to be determined at trial but exceeding the $75,000 jurisdictional threshold in any event.

## COUNT V
## NEGLIGENCE

66. Paragraphs 1 through 65 are realleged and reincorporated by reference herein.

67. The Association as a whole, and each of the individual Association Board Defendants and O'Donohue (in her capacity as an Association employee, officer, and agent), owe duties to Plaintiff as an Association member and Wailea Ekahi condominium owner.

68. The Defendants each breached these duties through the conduct set forth above.

69. As a result of these breaches, Plaintiff suffered general, special, incidental, and consequential damages in an amount to be determined at trial but exceeding the $75,000 jurisdictional threshold in any event.

## COUNT VI
## CIVIL CONSPIRACY

70. Paragraphs 1 through 69 are realleged and reincorporated by reference

herein.

71. The Board Member Defendants and O'Donohue disagreed with Plaintiff's attempts to professionalize the operations of the Wailea Ekahi. Because of this disagreement, Defendants sought to engage in concerted action to remove Plaintiff from the position of Board President.

72. The Defendants furthered that conspiracy by defaming Plaintiff and painting Plaintiff in a false light. The Defendants acted in concert to publish false and defamatory statements about Plaintiff committing misconduct and breaking Association rules.

73. The Defendants also furthered the conspiracy by breaching their fiduciary duties to Plaintiff and removing him as Board President in contravention of the results of the Investigation, the recommendations of the Report, and the advice of Counsel.

74. The Defendants also furthered that conspiracy by holding unnoticed and illegal Board meetings that violated the meeting requirements of the Wailea Ekahi rules and the Hawaiʻi condominium property regime statutes.

75. As a result of the conspiracy, Plaintiff was ousted as Board President and suffered reputational injury in his community.

76. As a result of the conspiracy, Plaintiff suffered general, special, incidental, and consequential damages in an amount to be determined at trial but

exceeding the $75,000 jurisdictional threshold in any event.

## COUNT VI
## DECLARATORY JUDGMENT

77. Paragraphs 1 through 76 are realleged and reincorporated by reference herein.

78. The Court has authority to declare the rights and responsibilities of parties under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

79. Plaintiff is entitled to a judgment declaring:

   a. that any statements or innuendoes made, endorsed, or adopted by Defendants that Plaintiff committed any misconduct in connection with the repair of his condominium unit were false and defamatory;

   b. that any statements or innuendoes made, endorsed, or adopted by Defendants that Plaintiff engaged in a kickback scheme with a third-party contractor were false and defamatory; and

   c. that the conclusions of the Investigation and the Report were correct and cleared Plaintiff of any wrongdoing; and

   d. that the Association and/or the individual Association Board Defendants breached their fiduciary duties to Plaintiff through the conduct alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff requests that the Court issue a judgment jointly and severally against Defendants for:

A.General, special, compensatory, consequential, incidental, and punitive damages in an amount to be determined at trial;

B.A judicial declaration as set forth in paragraph 79 above;

C.Attorney's fees and costs pursuant to the fee-shifting provisions of the Hawaii Condominium Code; and

D.Any other legal or equitable relief that this Court deems just and proper.

DATED:  Honolulu, Hawaiʻi, May 16, 2023.

CADES SCHUTTE
A Limited Liability Law Partnership


*/s/ Katherine E. Bruce*
JOHN P. DUCHEMIN
KATHERINE E. BRUCE
Attorneys for Plaintiff
CARL STRAUB, JR.